LOBRANO, Judge.
This appeal arises from an action for eviction of a lessee after the expiration of a lease. From a judgment in favor of the plaintiff-lessor, the defendant-lessee appeals. Plaintiff-lessor answered the appeal seeking damages for frivolous appeal.
UNDISPUTED FACTS:
On August 21, 1985, plaintiff-appellee, New Hotel Monteleone, Inc. (the Montel-eone) and defendant-appellant, Depp’s Bull Corner, Inc. (Depp’s) entered into a con *722 tract of lease whereby Depp’s agreed to lease from the Monteleone the restaurant located in Bienville House Hotel, 320 Decatur Street in the New Orleans French Quarter.
The lease provided for a primary term of five (5) years beginning September 1, 1985 and terminating August 31, 1990. The lease provided for monthly rental payments of $1,000.00 the first year; $1,050.00 the second year; $1,100.00 the third year; $1,150.00 the fourth year and $1,200.00 the fifth year. In addition the lease provided Depp’s the option to renew for an additional five (5) years. The lease provides in pertinent part:
“... If Lessee at its option, elects to extend the lease for an additional five (5) years, (option years) Lessor is to be notified 120 days in advance and rental for the option period will be 7% of gross sales per month. A monthly sales report together with the percentage rent for the prior month will be due and payable not later than the 8th day of the following month.”
In September 1990, The Monteleone and Depp’s agreed to an increased monthly rent of $1,500.00 plus $100.00 for utilities. Depp’s continued to occupy the premises at that rent until August, 1991. No new written lease was negotiated.
On August 14, 1991, Ronald Pincus, vice president and chief operating officer for the Monteleone sent a letter confirming an oral agreement entered into on August 13, 1991 whereby Depp’s agreed to vacate the premises by August 31, 1991.
In response, Depp’s attorney forwarded a letter dated August 16, 1991, to the Mon-teleone stating the lease remains in effect until August 31, 1995 and offered to renegotiate a new written lease.
Taking exception to Depp’s position, the attorney for the Monteleone forwarded a letter, dated August 22, 1991, to Depp’s attorney stating the lease expired on August 31, 1990 and Depp’s had been paying rent on a month to month basis since that date.
Several additional letters followed between the parties disputing the status of the lease and whether Depp’s had exercised the five year option to renew. Depp’s refused to vacate the premises.
Subsequently, on September 9, 1991, the Monteleone sent a “Notice of Termination” of the month to month lease effective September 30, 1991 and served Depp’s with a five (5) day notice to vacate.
On October 1, 1991, Depp’s filed a Petition For Injunction and obtained a restraining order against the Monteleone.
The Monteleone filed a Petition for Possession on October 10, 1991. Both suits were consolidated.
ACTION OF THE TRIAL COURT:
Trial on the eviction suit was held October 25, 1991. The court found in favor of the Monteleone and ordered Depp’s to vacate the premises within twenty four (24) hours.[1] In his reasons for judgment, the trial judge stated:
“The issue in this case becomes whether or not a lease which was for five years and which expired I think August 31st, 1990 was extended by the exercise of an option which the plaintiff had to exercise for another five years within a hundred and twenty days of the expiration of the lease. A hundred and twenty days would have been May 3rd, 1990 which would have been the critical time for the exercise of the option. The defendant has testified to several conversations that he felt was [sic] adequate to exercise the option. The Court finds that they are not adequate. The Court finds if you want to exercise an option, you will say, ‘I’m going to exercise my option for five years.’ We don’t have that in this case. So the Court finds the conversations that took place are inadequate to act on the exercise of the option for five years which calls for the rent then of seven percent of the gross income of the *723 defendant in the rule. You know, we can comment upon the rent that was paid and the failure to pay the seven percent or the failure to at the end of the year adjust any payments that had been made during the year. But I don’t think any of those are relevant. I just find as a matter of fact that the conversations that took place are inadequate for the exercise of the option; therefore, I will order the eviction.”
Depp’s asserts the following trial court errors:
1) The trial court erred in imposing requirements upon Depp’s beyond that specifically required by the written lease agreement;
2) The trial court erred in reading the vague and ambiguous provisions of the written lease agreement against Depp’s when the agreement was prepared solely by the Monteleone;
3) The trial court erred by failing to attach sufficient significance to the circumstantial evidence that the Monteleone received sufficient actual notice that Depp’s exercised the option to renew.
Initially we note that Depp’s did not brief the above assignments of error. Assignments of error raised but not briefed on appeal are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. Nevertheless, a thorough reading of the written lease shows no ambiguity or vagueness in its provisions. Furthermore, the record clearly shows that the trial court placed no requirements on Depp’s other than those specified in the written lease. Thus, the sole issue for our determination is whether the court erred in finding, as a matter of fact, that Depp’s failed to prove that it exercised the option to renew the lease for a second five year term. After review of the evidence we find no error.
David Monteleone testified that in September, 1990 he was the general manager of the Bienville House Hotel and that on September 18, 1990 he met with Mr. Depp. At that meeting it was determined that since Depp’s did not exercise the option to renew, the rent would be $1,500.00 per month on a monthly basis, plus $100.00 per month for utilities. He further stated that Mr. Depp agreed that he no longer had a lease and agreed to the increased rent. At no time during the meeting did Mr. Depp object or state that the lease had been renewed for an additional five years. Mon-teleone testified that if Mr. Depp had exercised the option to renew within the 120 day period prior to the termination of the lease, either he or Mr. Goodman, his prior general manager, would have had to be notified. Although Mr. Goodman died subsequent to the 120 day cut-off period he (Goodman) did not advise Monteleone of any action by Depp’s to exercise the option.
Florence Condon, assistant general manager of the Bienville House Hotel, testified that she was present at the meeting in September, 1990 between David Montel-eone and Mr. Depp. She confirmed the substance of that meeting as testified to by Mr. Monteleone.
Marlene Bogatsch, Howard Goodman’s personal secretary, testified that she was familiar with the file for Depp’s Bull Corner Restaurant and that it did not contain any documentation indicating Depp’s exercised the option to renew. As far as she knew, the lease had not been renewed.
Ronald Pincus, vice president and chief operating officer of the Monteleone testified that he and Bonnie Leigh, general manager of the Bienville House Hotel, met with Douglas Depp on August 13, 1991 in Leigh’s office and informed Mr. Depp that the Monteleone was terminating his monthly lease effective August 31, 1991. Depp agreed to vacate the premises by that date. On August 14, 1991 Pincus sent Depp a letter confirming the meeting and agreement to vacate. Bonnie Leigh verified the substance of that meeting in accordance with Pincus’ testimony.
Donald Douglas Depp, owner of Depp’s Bull Corner Restaurant, denied that any meeting took place between himself, David Monteleone and Florence Condon in September, 1990 whereby he agreed the lease would be on a month to month basis. He further denied that he agreed to vacate the premises by August 31, 1991 as testified to by Ronald Pincus and Bonnie Leigh.
*724 Depp testified that he never specifically told anyone that he was exercising the option to renew. Rather, he offered his testimony of general conversations between himself, Goodman and Monteleone asserting that the nature of these conversations proved his intent to exercise the option to renew. The thrust of those conversations centered on his (Depp’s) borrowing additional funds to keep the restaurant operating. When asked what he did to exercise the option, Depp testified:
Q. What did you do to exercise that option?
* * * * * #
I think that number one by going out and borrowing the money at the bank and Mr. Monteleone assuring me that I had no problem of the lease being extended past the 1995 date was one indication to me that in the conversation with Mr. Monteleone and Mr. Goodman during the time when they were encouraging me and Mr. Monteleone came to me and said, ‘Doug, do I need to find somebody else to run the restaurant,’ because I lost interest in it? And I said, ‘No, David, why should I lose interest in a restaurant that has made twenty-four thousand dollars up to this point when before it was losing thirty-five?’ I mean I went and borrowed the money when I was losing thirty-five. So why would I want to leave when I made a twenty-four thousand dollar profit?
Q. So is that how you exercised your option to renew the lease?
* # * * * *
In April, I told David Monteleone, ‘Yes, I am staying’ in his conversation should I find somebody else. ‘You’re not interested.’ I said, ‘Why would I not be interested in staying, David? Just because my car is parked out front doesn’t mean that I'm home.’ That was the statement that Mr. Monteleone made to me and that was my reply.
Q. Okay are you finished now?
A. Yes.
Q. Is that how you exercised your option to renew that lease?
A. Yes.”
We find the expressions of our Supreme Court in Governor Claiborne Apartments v. Attaldo, 256 La. 218, 235 So.2d 574 (La.1970) particularly applicable to the instant case. The court opined:
“In the absence of an affirmative showing by the defendant — that is, discharge of his burden of proof — that there was a renewal of the lease by implied or express agreement for a fixed term from February 1, 1968, to January 31, 1972, we would be required to hold that defendant’s occupancy of the premises was under a reconduction of the written lease on a month-to-month basis_
Reconduction in Louisiana does in fact make all of the provisions of the original lease applicable and effective except that for term of duration. Lessor could require of lessee compliance with every condition of the original lease under the theory of reconduction as fully as if there had been an actual renewal of the lease, except that lessor could not require occupancy for a fixed term just as lessee could not require the right to occupancy for a fixed term; and of course the notice of termination by either party is controlled by Article 2686 rather than by contract.
* * * * * *
While assent to a contract may be implied, that implication must be established and cannot be presumed. Defendant’s burden was to establish a lease for a fixed term. He had to prove a meeting of the minds of the contracting parties that their relationship as lessor and lessee was for the alleged fixed term, by either express language or by circumstances (action or inaction) that necessarily implied the proposition.”
Once Depp’s lease expired by its own terms, Depp’s bore the burden of proving it had exercised the option to renew for an additional five years. The trial court concluded it did not. After review of the evidence we simply cannot find where that conclusion is clearly wrong.
FRIVOLOUS APPEAL:
In answering this appeal, the Mon-teleone seeks damages for frivolous appeal *725 in accordance with Code of Civil Procedure Article 2164.
“Before damages for a frivolous appeal lie, it must be manifest that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of law he advocates.” Sherman v. B & G Crane Service, 455 So.2d 1275, 1278 (La.App. 4th Cir.1984).
We find insufficient evidence to support Monteleone’s request and therefore reject the claim for frivolous appeal.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellant.
AFFIRMED.

. The Petition For Injunction became moot since there was judgment in favor of the Mon-teleone.